/

United States District Court
Southern District of Texas
FILED

FEB 1 5 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PRAXIS ENERGY AGENTS S.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | C.A. NO. _____ **B-02- 028** |
| | § | Admiralty |
| M/V DINA, her engines, tackle, | § | Rule 9(h) |
| appurtenances, etc., *in rem*, | § | |
| | § | |
| Defendant. | § | |

## VERIFIED ORIGINAL COMPLAINT

COMES NOW Plaintiff, Praxis Energy Agents S.A., ("Praxis"), by its attorneys, Georgantas & Walters L.L.P., and files this its Verified Original Complaint complaining of the M/V DINA, *in rem*, and alleges as follows upon information and belief:

### I. JURISDICTION AND VENUE

1.     This is a case of admiralty jurisdiction, 28 U.S.C. § 1333, within the meaning of Federal Rule of Civil Procedure Rule 9(h) and is brought pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

### II. PARTIES

2.     Praxis is a foreign corporation or other similar business entity with the power to sue and be sued with offices at 63 Dragatsaniou Street, 185 45 Piraeus, Greece.  Praxis supplies bunkers to vessels at various ports.

3.     The M/V DINA is a 1978 built dry cargo vessel documented under the laws and the flag of Liberia, official number 7703546. The vessel is within the jurisdiction of this Court and is presently docked at the Port of Brownsville.

### III. PRAXIS' CLAIMS AGAINST THE M/V DINA

### A. Claim No. 1

4.     On or about October 19, 2001, an authorized agent of the M/V DINA's owners, requested and Praxis agreed to supply the M/V DINA with bunkers at Las Palmas, Spain.  The supply and delivery of the bunkers was made pursuant to Praxis' Standard Terms and Conditions which were incorporated in the bunker nomination. Please see the bunker nomination for Contract No. 10893 attached as Exhibit "1" and incorporated by reference.

5.     Pursuant to that agreement, on October 26, 2001, Praxis, through its local provider, Compania Espanola de Petroleos S.A., supplied bunkers to the M/V DINA at Las Palmas.  Please see the bunker receipt for Contract No. 10893 attached as Exhibit "2" and incorporated by reference.

6.     On November 20, 2001, Praxis duly presented its invoice in the amount of $132,210.00 for bunkers supplied under Contract No. 10893 and demanded payment.  Please see the invoice for Contract No. 10893 attached as Exhibit "3" and incorporated by reference.

7.   Notwithstanding the demand for payment the sums owed under the invoice remain unpaid and outstanding.  Such wrongful refusal and/or failure to pay the sums owed under the invoice constitutes a material breach and wrongful repudiation of the above described supply agreement.

8.   Pursuant to Praxis' Standard Terms and Conditions and because the invoice was not timely paid, interest in the amount of $4,583.28, as of February 15, 2002, has accrued on the outstanding amounts.  Please see the debit for interest accrued on the invoice for Contract No. 10893 attached as Exhibit "4" and incorporated by reference.

9.   Because of the material breach and wrongful repudiation of the supply agreement, Praxis is owed and has sustained damages in the approximate amount of $136,793.28, together with costs, expenses and attorneys' fees, no part of which has been paid, although duly demanded.

### B. Claim No. 2

10.   On or about December 21, 2001, Praxis agreed to supply the M/V DINA with bunkers at Antwerp, Belgium.  The supply and delivery of the bunkers was made pursuant to Praxis' Standard Terms and Conditions which were incorporated in the bunker nomination. Please see the bunker nomination for Contract No. 121118 attached as Exhibit "5" and incorporated by reference.

11.   Pursuant to that agreement, on December 22, 2001, Praxis, through its local provider, Wiljo Bunkering N.V., supplied bunkers to the M/V DINA at Antwerp.   Please see the bunker receipt for Contract No. 121118 attached as Exhibit "6" and incorporated by reference.

12.   On January 3, 2002, Praxis duly presented its invoice in the amount of $54,618.46 for bunkers supplied under Contract No. 121118 and demanded payment.   Please see the invoice for Contract No. 121118 attached as Exhibit "7" and incorporated by reference.

13.   Notwithstanding the demand for payment, the sums owed under the invoice remain unpaid and outstanding.   Such wrongful refusal and/or failure to pay the sums owed under the invoice constitutes a material breach and wrongful repudiation of the above described supply agreement.

14.   Pursuant to Praxis' Standard Terms and Conditions and because the invoice was not timely paid, interest in the amount of $910.31, as of February 15, 2002, has accrued on the outstanding amounts.   Please see the debit for interest accrued on the invoice for Contract No. 121118 attached as Exhibit "8" and incorporated by reference.

15.   Because of the material breach and wrongful repudiation of the supply agreement, Praxis is owed and has sustained damages in the approximate amount of $55,528.77, together with costs,

expenses and attorneys' fees, no part of which has been paid, although duly demanded.

### C. Claim No. 3

16.   On or about January 10, 2002, Praxis agreed to supply the M/V DINA with bunkers at Bari, Italy.   The supply and delivery of the bunkers was made pursuant to Praxis' Standard Terms and Conditions which were incorporated in the bunker nomination. Please see the bunker nomination for Contract No. 010033 attached as Exhibit "9" and incorporated by reference.

17.   Pursuant to that agreement, on January 11, 2002, Praxis, through its local supplier, Agip Petroli SPA, provided bunkers to the M/V DINA at Bari.   Please see the bunker receipt for Contract No. 010033 attached as Exhibit "10" and incorporated by reference.

18.   On January 21, 2002, Praxis duly presented its invoice in the amount of $11,272.00 for bunkers supplied under Contract No. 010033 and demanded payment.   Please see the invoice for Contract No. 010033 attached as Exhibit "11" and incorporated by reference.

19.   Notwithstanding the demand for payment, the sums owed under the invoice remain unpaid and outstanding.   Such wrongful refusal and/or failure to pay the sums owed under the invoice constitutes a material breach and wrongful repudiation of the above described supply agreement.

20.   Pursuant to Praxis' Standard Terms and Conditions and because the invoice was not timely paid, interest in the amount of

$37.57, as of February 15, 2002, has accrued on the outstanding amounts.  Please see the debit for interest accrued on the invoice for Contract No. 010033 attached as Exhibit "12" and incorporated by reference.

21.  Because of the material breach and wrongful repudiation of the supply agreement, Praxis is owed and has sustained damages in the approximate amount of $11,309.57, together with costs, expenses and attorneys' fees, no part of which has been paid, although duly demanded.

### IV. RULE C LIEN ALLEGATIONS SOUNDING IN CONTRACT

22.  Pursuant to Praxis' Standard Terms and Conditions (Clause 10.00), Praxis has a maritime lien against the M/V DINA for the supplies of bunkers at the ports of Las Palmas, Antwerp and Bari.

23.  Additionally, and in the alternative, pursuant to Section 114 of Title 22 of the Liberian Code of Laws of 1956, the supply of bunkers by Praxis to the M/V DINA gives rise to a maritime lien against the M/V DINA under the law of Liberia.  A copy of Title 22 of the Liberian Code of Laws of 1956 attached as Exhibit "13" and incorporated by reference.  Spain, Belgium and Italy, the places where the deliveries took place, recognize and give effect to the maritime lien law of the flag state under which a vessel is registered.

24. Therefore, Praxis has a maritime lien, pursuant to contract and by operation of law, against the M/V DINA for such bunkers in the approximate amount of $203,631.62, together with costs, expenses and attorneys' fees.

## V. RULE C LIEN ALLEGATIONS SOUNDING IN TORT

### A. Claim for Conversion

25. Subsequent to the supply of bunkers at Las Palmas, Antwerp and Bari, Praxis retained title to the bunkers pursuant to clause 8.06 of Praxis' Standard Terms and Conditions until such time as payment was received by Praxis. The M/V DINA consumed the bunkers without payment or Praxis' consent, dispossessing Praxis of its interests in the bunkers.

26. Thus Praxis was wrongfully dispossessed of its interests in those bunkers and such wrongful dispossession, *inter alia,* constitutes conversion. Because the conversion took place on navigable waters it constitutes a maritime tort giving rise to a maritime lien. As a result of the conversion, Praxis has been damaged by being deprived of the fair market value of the bunkers, which at the time of the consumption was $198,100.46.

### B. Unjust Enrichment

27. Additionally, and in the alternative, by reason of the M/V DINA's receipt and consumption of the bunkers without payment to Praxis, the M/V DINA has been unjustly enriched by the fair market value of the bunkers.

28. Because the unjust enrichment took place on navigable waters it constitutes a maritime tort giving rise to a maritime lien. As a result of the unjust enrichment, Praxis has been damaged by being deprived of the fair market value of the bunkers, which at the time of the consumption was $198,100.46.

29. By reason of the aforementioned torts of conversion and unjust enrichment committed by the M/V DINA, Praxis holds a lien against the M/V DINA for the fair market value of the bunkers.

## VI. ATTORNEYS' FEES

30. As a result of the breaches, Praxis has been forced to retain counsel and seeks reimbursement of all reasonable and necessary attorneys' fees and expenses incurred by it resulting from the breaches. Praxis is entitled to recover reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code, because this is a suit on written contracts, which is listed in § 38.001(8).

31. All and singular of the premises are true and within the admiralty jurisdiction of the United States of America and of this Court.

## VII. **PRAYER**

WHEREFORE, Praxis prays:

(a)   That process in due form of law according to the practice of this Court in cases of admiralty jurisdiction issue against the M/V DINA, her engines, tackle, furniture, apparel, appurtenances, etc., and that all persons claiming any title or right to said vessel may be cited to appear and answer under oath the allegations of this Verified Original Complaint;

(b)   That a judgment may be entered in favor of Praxis against the M/V DINA for the amount of Praxis' damages and attorneys' fees, together with interest and the costs and disbursements of this action;

(c)   That the M/V DINA, her engines, tackle, furniture, apparel, appurtenances, etc., be condemned and sold, free and clear of all liens and encumbrances to satisfy the judgment against the M/V DINA and that this Court award Praxis, out of the proceeds of said sale, the full amount of their claims, together with interest, cost and attorneys' fees; and

(d)   That this Court grant to Praxis such other and further relief as may be just and proper.

Respectfully submitted,

Dimitri P. Georgantas
Attorney-In-Charge
Texas State Bar No. 07805100
Federal I.D. No. 2805
Seth A. Nichamoff
Texas State Bar No. 24027568
Federal I.D. No. 27002
815 Walker Street, Suite 953
Houston, Texas  77002
Telephone:  (713) 546-9800
Facsimile:  (713) 546-9806

ATTORNEYS   FOR   PLAINTIFF   PRAXIS
ENERGY AGENTS S.A.

OF COUNSEL:
GEORGANTAS & WALTERS, L.L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PRAXIS ENERGY AGENTS S.A.,           §
                                     §
        Plaintiff,                   §
                                     §
                                     §
        VS.                          §     C.A. NO. **B-02- 028**
                                     §     Admiralty
M/V DINA, her engines, tackle,       §     Rule 9(h)
appurtenances, etc., *in rem*,       §
                                     §
        Defendant.                   §

## VERIFICATION

STATE OF TEXAS                       §
                                     §
COUNTY OF HARRIS                     §

        BEFORE ME, the undersigned authority, on this day personally
appeared Dimitri P. Georgantas, who being duly sworn, deposed and
stated as follows:

        "I am the attorney for Praxis Energy Agents S.A., in
        connection with the referenced matter.  I have read the
        foregoing Verified Original Complaint and know the
        contents thereof, and that the same are true to the best
        of my knowledge, information and belief, based upon
        documentation and information provided to me by Praxis
        Energy Agents S.A.   The reason that I make this
        verification instead of Praxis Energy Agents S.A. is that
        Praxis Energy Agents S.A. is a foreign corporation or
        other business entity, no officer or director of which is
        now within this District."

                                    _____
                                    Dimitri P. Georgantas

        SUBSCRIBED AND SWORN to before me this 14th day of February,
2002.

                                    _____
                Notary Public, State of Texas

SYLVIA L. THOMAS
MY COMMISSION EXPIRES
January 4, 2004

K:\client\99\134\Original Complaint.01          11

# Praxis

### ENERGY AGENTS

## BUNKER NOMINATION

19 October, 2001

**TO: MILLENIUM MARITIME SERVICES INC.**
**ATTENTION: CAPT. DMITRIY RYCHKOV**

### CONTRACT NUMBER: 10893-DK

ACTING AS CONTRACTUAL SELLERS AND IN ACCORDANCE WITH INSTRUCTIONS RECEIVED
BY PURCHASER M/V "DINA" AND OWNERS WE HAVE NOMINATED THE FOLLOWING BUNKER
STEM IN ACCORDANCE WITH OUR GENERAL TERMS AND CONDITIONS:

| | | |
|---|---|---|
| BUYER: | MILLENIUM MARITIME SERVICES INC. | |
| | AND/OR M/V DINA | |
| | AND/OR MASTER/OWNERS/MANAGERS/OPERATORS | |
| SELLER: | PRAXIS ENERGY AGENTS S.A. | |
| PHYSICAL SUPPLIER: | CEPSA | |
| MOTOR VESSEL: | DINA | |
| PORT OF SUPPLY: | LAS PALMAS | |
| DATE OF DELIVERY: | 25TH – 28TH OF OCTOBER 2001 | |
| GRADE/QUALITY: | IFO-180 cSt | DIESEL OIL (DMB) |
| | (RME-25, EXCEPT MAX. VA: 250 MG/KG) | |
| QUANTITY: | 800 MTS | 110 MTS |
| PRICE (S): | USD 131.50 /MT | USD 236.00 /MT |
| TRANSPORTATION: | INCLUDED BY BARGE | |
| CALLING COSTS: | USD 1050.00 LUMP SUM FOR BUNKERS ONLY CALL | |
| AGENTS: | ALFA SHIP | |
| TERMS OF PAYMENT: | WITHIN SIXTY (60) DAYS FROM DATE OF DELIVERY VIA WIRE TRANSFER AGAINST ORIGINAL INVOICE AND DELIVERY RECEIPT (S). | |

### *SPECIAL TERMS*

1. ALL BUNKER DELIVERIES IN CANARY ISLANDS ARE PLACED SUBJECT TO WEATHER
   PERMITTING AND FIRST COME FIRST SERVED BASIS;
2. SPECIFICATIONS TO BE IN ACCORDANCE WITH THE INTERNATIONAL STANDARDS. AS
   THOSE SET BY THE INTERNATIONAL STANDARDIZATION ORGANIZATION *ISO 8217/1996 (E)*;
3. BUYERS AND/OR END USERS HAVE THE OPTION TO APPOINT ANY BUNKER SURVEYOR IN
   ORDER TO VERIFY THE DELIVERED QUANTITY AND THE QUALITY STANDARDS. SEALED
   REPRESANTITIVE SAMPLES TO BE TAKEN DURING THE BUNKERING OPERATION FROM
   BARGE'S MANIFOLD ONLY AND BE GIVEN TO THE MASTER OF THE SPECIFIC VESSEL;
4. ANY EXTRA CHARGES INCLUDING OVERTIME, TAXES ETC., IF INCURRED, TO BE AT COST
   AND FOR BUYERS ACCOUNT UNLESS OTHERWISE STATED.

THE DETAILS OF THIS NOMINATION ARE BEING SENT TO BOTH END USER AND SUPPLIER.
ANY ERRORS OR OMMISSIONS SHOULD BE REPORTED BY EITHER PARTY IMMEDIATELY.

FOR ALL YOUR *W O R L D W I D E* BUNKER INQUIRIES PLEASE CONTACT OUR OFFICES AT:
EUROPE: TELEPHONE +30 1 40 800 40, FACSIMILE +30 1 40 800 41, MOBILE +30 93 253 5077, E-MAIL praxis@ath.forthnet.gr
AMERICA: TELEPHONE +1 201 512 8780, FACSIMILE +1 201 512 8789, MOBILE +1 201 647 0386, E-MAIL praxisamerica@aol.com

PLAINTIFF'S
EXHIBIT

**CEPSA**

COMPAÑIA ESPAÑOLA DE PETROLEOS, S.A.
CAMPO DE LAS NACIONES - AVDA. DEL PARTENON, 1.
28042 MADRID (ESPAÑA)

## RECIBO DE ENTREGA BUNKER / BUNKER RECEIPT

| DEPENDENCIA SUMINISTRADORA / BUNKER INSTALLATIONS | Nº C A E | FECHA SUMINISTRO / SUPPLY DATE | Nº RECIBO / RECEIPT Nº |
|---|---|---|---|

| PORT / PUERTO | PUNTO DE ENTREGA / SUPPLY POINT | Nº NOMINACION / NOMINATION Nº |
|---|---|---|
| | | 82196 |

| NOMBRE DEL BUQUE / VESSEL'S NAME | BANDERA / FLAG | DESTINO BUQUE / DESTINATION |
|---|---|---|

| CLIENTE / CUSTOMER | N.I.F. / COD. | CONSIGNATARIO / PORT AGENT | N.I.F. |
|---|---|---|---|
| 47580 PRAES ENERGY AGENTS | | ALFASHIP | |

| TIPO DE OPERACION | CON I.E. | EXENTO DE I.E. | PESCA | CON I.V.A. / I.G.I.C. | EXENTO I.V.A. / I.G.I.C. |
|---|---|---|---|---|---|

| FORMA DE SUMINISTRO / METHODS OF DELIVERY | | | | | | | |
|---|---|---|---|---|---|---|---|
| GABARRAS / BARGES | 001 | NOMBRE / BARGES | TUBERIA / PIPE LINE | 002 | CAMION / TANK TRUCK | 003 | MONOBOYA / MONOBUOY | 004 | OTROS / OTHERS |

| PRODUCTOS PRODUCTS | ENTREGAS | CANTIDADES SUMINISTRADAS SUPPLIED QUANTITIES | | DENSIDAD DENSITY | VISCOSIDAD cSt VISCOSITY cSt | % AZUFRE % SULPHUR | INFLAMABILIDAD ºC FLASH POINT ºC |
|---|---|---|---|---|---|---|---|
| | | TM | M³ | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### DATOS DE TIEMPO / TIME SHEET

| | AÑO YEAR | MES MONTH | DIA DAY | HORA HOUR | MINUTO MINUTE | | AÑO YEAR | MES MONTH | DIA DAY | HORA HOUR | MINUTO MINUTE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ATRACO / FONDEO DOCKED / ANCHORED | | | | | | TERMINO COMPLETED | | | | | |
| ACOPLO CONNECTED | | | | | | DESACOPLO DISCONNECTED | | | | | |
| EMPEZO COMMENCED | | | | | | H. E. GABARRA / CAMION BARGE / TRUCK OVER TIME | HORAS / HOURS | | MINUTOS / MINUTES | |

### MEZCLA / BLENDING

| | | Tm DE / Tm OF | | | | Tm DE / Tm OF |
|---|---|---|---|---|---|---|
| IFO | cSt | Tm DE / Tm OF | | IFO | cSt | Tm DE / Tm OF |
| | | Tm DE / Tm OF | | | | Tm DE / Tm OF |

Recibida la/s cantidad/es indicada/s para consumo en buque que no realiza navegación privada de recreo, junto con una muestra debida los producto/s.

Received on board the stated qantity/ies to be used as bunker in commercial shipping, together with representative sample/s.

FIRMA RESPONSABLE SUMINISTRO
SUPPLIER'S REPRESENTATIVE SIGNATURE

FIRMA DEL CAPITAN Y NOMBRE DEL BUQUE / MASTER'S SIGNATURE AND VESSEL'S STAMP

**CEPSA**

| | IFOS | MGO / MDO | OBSERVACIONES / REMARKS |
|---|---|---|---|
| MUESTRA BARCO, NUMERO / SHIP'S SAMPLE NUMBER | | | |
| MUESTRA CEPSA, NUMERO / CEPSA SUPPLIERS SAMPLE NUMBER | | | |
| MUESTRA CUSTODIA CEPSA, NUMERO / CUSTODY CEPSA SAMPLE NUMBER | | | |


PLAINTIFF'S EXHIBIT

# Praxis

ENERGY AGENTS

## INVOICE

### 20 November, 2001

M/V DINA
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR MILLENIUM MARITIME SERVICES INC
845 FIFTH AVENUE, SUITE 706
NEW YORK, NY 10022
USA

### INVOICE DETAILS

| INVOICE No. | BUYER | M/V | PORT | DELIVERY DATE |
|---|---|---|---|---|
| 10893 | As Above | Dina | Las Palmas | 25/10/2001 |

| GRADE | QUANTITY | UNIT | PRICE | AMOUNT |
|---|---|---|---|---|
| Fuel Oil | 800.000 | Metric Tonne | 131.50 USD | 105200.00 USD |
| Diesel Oil | 110.000 | Metric Tonne | 236.00 USD | 25960.00 USD |
| Transportation | 0.000 | Metric Tonne | 0.00 USD | 0.00 USD |
| Calling Costs | 1.000 | Lumpsum | 1050.00 USD | 1050.00 USD |
| | | | | |
| | | | | |
| | | | TOTAL: | 132210.00 USD |

**Due Date: 25/12/2001**   (Credit Terms: 60 Days)

An interest charge of 2,00% pro rata per month will be levied for overdue payment.

Please remit by telegraphic transfer free of all bank charges to:

BANK OF CYPRUS (Swift Code: BCYPGRAA002)
367 Sygrou Avenue, 175 64 Paleon Faliro, Greece
in favour of: PRAXIS ENERGY AGENTS
account nbr: 105 2947
(Correspondent: Chase Manhattan Bank, New York)

PRAXIS ENERGY AGENTS S.A. - 43 DRAGATSANIOU STREET, 185 45 PIRAEUS, GREECE - VAT NO. 098117310
TELEPHONE: +(30 10) 40 800 40, FACSIMILE: +(30 10) 40 800 41, DUTY MOBILE: +(30 93) 25 35 077, E-MAIL: europe@praxisenergyagents.com

PLAINTIFF'S
EXHIBIT
3
rabbler

# Praxis

ENERGY AGENTS

## DEBIT NOTE

15 February, 2002

M/V DINA
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR MILLENIUM MARITIME SERVICES INC
845 FIFTH AVENUE, SUITE 706
NEW YORK, NY 10022
USA

### DEBIT NOTE DETAILS

| DEBIT No. | BUYER | M/V | PORT | DELIVERY DATE |
|---|---|---|---|---|
| 10893 (D) | As Above | Dina | Las Palmas | 26/10/2001 |

| INVOICE | CREDIT | DUE DATE | VALUE DATE | AMOUNT |
|---|---|---|---|---|
| 132210.00 USD | 60 Days | 25/12/2001 | 15/02/2002 | 4583.26 USD |
| | | | | |
| | | | | |
| | | | TOTAL: | 4583.26 USD |

**Due Date: 15/02/2002**   (Late Payment of 52 Days)

Late payment interest charge is levied at 2.00% pro rata per month.

Please remit by telegraphic transfer free of all bank charges to:

**BANK OF CYPRUS** (SWIFT CODE: BCYPGRAA002)
367 SYGROU AVENUE, 175 64 PALEON FALIRO, GREECE
IN FAVOUR OF: **PRAXIS ENERGY AGENTS**
ACCOUNT NBR: 135 2947
(CORRESPONDENT BANK: CHASE MANHATTAN, NEW YORK)


PLAINTIFF'S
EXHIBIT

# Praxis

ENERGY AGENTS

## BUNKER NOMINATION

### 21 December, 2001

TO: MILLENIUM MARITIME SERVICES INC.
ATTENTION: CAPT. ANDREAS ANDROULIDAKIS

### CONTRACT NUMBER: 121118-GRE-dc

ACTING AS CONTRACTUAL SELLERS AND IN ACCORDANCE WITH INSTRUCTIONS RECEIVED BY PURCHASER M/V "DINA" AND OWNERS WE HAVE NOMINATED THE FOLLOWING BUNKER STEM IN ACCORDANCE WITH OUR GENERAL TERMS AND CONDITIONS:

|  |  |  |
|---|---|---|
| BUYER: | MILLENIUM MARITIME SERVICES INC. | |
| | AND/OR M/V DINA | |
| | AND/OR MASTER/OWNERS/MANAGERS/OPERATORS | |
| SELLER: | PRAXIS ENERGY AGENTS S.A. | |
| PHYSICAL SUPPLIER: | WILJO BUNKERING N.V. | |
| MOTOR VESSEL: | DINA | |
| PORT OF SUPPLY: | ANTWERP | |
| DATE OF DELIVERY: | PROMPT (22ND – 23RD OF DECEMBER 2001) | |
| GRADE/QUALITY: | IFO-180 cSt (RME-25) | DIESEL OIL (DMB) |
| QUANTITY: | 380 MTS | 40 MTS |
| PRICE (S): | USD 127,00 /MT | USD 157,00 /MT |
| TRANSPORTATION: | INCLUDED BY BARGE | |
| CALLING COSTS: | --- | |
| AGENTS: | B.A.S.F | |
| TERMS OF PAYMENT: | WITHIN THIRTY (30) DAYS FROM DATE OF DELIVERY VIA WIRE TRANSFER AGAINST ORIGINAL INVOICE AND DELIVERY RECEIPT (S). | |

### SPECIAL TERMS

1. SPECIFICATIONS TO BE IN ACCORDANCE WITH THE INTERNATIONAL STANDARDS AS THOSE SET BY THE INTERNATIONAL STANDARDIZATION ORGANIZATION ISO 8217/1996 (E);
2. BUYERS AND/OR END USERS HAVE THE OPTION TO APPOINT ANY BUNKER SURVEYOR IN ORDER TO VERIFY THE DELIVERED QUANTITY AND THE QUALITY STANDARDS. SEALED REPRESANTITIVE SAMPLES TO BE TAKEN DURING THE BUNKERING OPERATION FROM BARGE'S MANIFOLD ONLY AND BE GIVEN TO THE MASTER OF THE SPECIFIC VESSEL;
3. ANY EXTRA CHARGES INCLUDING OVERTIME, TAXES ETC., IF INCURRED, TO BE AT COST AND FOR BUYERS ACCOUNT UNLESS OTHERWISE STATED.

THE DETAILS OF THIS NOMINATION ARE BEING SENT TO BOTH END USER AND SUPPLIER. ANY ERRORS OR OMMISSIONS SHOULD BE REPORTED BY EITHER PARTY IMMEDIATELY.

FOR ALL YOUR W O R L D W I D E BUNKER ENQUIRIES PLEASE CONTACT OUR OFFICES AT:
EUROPE- PHONE: +(30 10) 40 800 40, FAX: +(30 10) 40 800 41, DUTY MOBILE: +(30 73) 25 36 077, E-MAIL: europe@praxisbunkeragents.com
AMERICA- PHONE: +(1 201) 512 8780, FAX: +(1 201) 512 8769, DUTY MOBILE: +(1 201) 647 0388, E-MAIL: america@praxisbunkeragents.com


PLAINTIFF'S EXHIBIT 5

 **ENERGY GROUP**

N.V.    B U N K E R    R E C E I P T

TEL. Antwerpen 03/232.36 10    FAX 03/226.56 47    TELEX 32367
BTW 98.406.494.529    H.R. Antwerpen 173.678

Statistiek : .

Doc. Nr. : EX :

Waarde    :

Received for use as bunkers in international
waters on board

M.S./S.S. : ......._DINA_..........    Date : 23/12/99....

Nationality : ...._LIBERIA_...........    Port : _ANTWERP - ANSA_...

For account of : ..........................

| Grade of oil | APPROXIMATE ANALYSIS | | |
| --- | --- | --- | --- |
| | Intermediate Fueloil A80 CST | Diesoil Blended/Destillate | Gasoil |
| Density at 15°C | _0.9100_ | | |
| Kin. visc., CST (Max) | MAX _177_ CST at 50°C | at 40°C | at 4 |
| Flash Point PM cc | 74 DEGR.C. | | |
| Sulphur | MAX 3.5 % | | |
| Pourpoint | MAX _15_ DEGR.C. | | |
| Sediment and water | MAX _1.0_ % | | |
| Metric Tons | _380.947_ | | |
| Litres at 15°C | _383.772_ | | |
| Bunkering commenced | _14.35_ | | |
| Bunkering completed | _16.40_ | | |
| Barge | _ROBYN_ | | |

Quantity measured on water and found correct.
**WILJO N.V. ANTWERP**
**H. GOOSSENS**
Samples drawn and delivered in presence of master, chief-engineer or other
ship's representative.
WILJO NV  representative N.V.    MASTER:
WILJO NV    Chief-Engineer ..................
_S.A.S. M.V. 600 404_



**PLAINTIFF'S EXHIBIT**



# ENERGY GROUP

B U N K E R    R E C E I P T

M.V.

TEL. Antwerpen 03.232.39.16     FAX 03.232.69.47     TELEX 33297
BTW BE 400.494.039              H.R. Antwerpen 173.878

Statistiek :                                Doc. Nr. : EX 1

Waarde    :

Received for use as bunkers in international
waters on board

MS/SS : ..DYMA................     Date : 27/12/2001...

Nationality ? .LIBERIA.........     Port : Antwerp............

For account of : ...........................

| Grade of oil | Intermediate Fueloil | APPROXIMATE ANALYSIS Dieseloil Blended/Destillate | Gasoil |
|---|---|---|---|
| Density at 15°C | | 0,8457 | |
| Kin. visc., CST (Max) | ......... at 50°C | MAX 11cst at 40°C | ...... at 40 |
| Flash Point PM cc | | 82 DEGR.C. | |
| Sulphur | | MAX 1,4 % | |
| Pourpoint | | - 10 DEGR.C. | |
| Sediment and water | | TRACES | |
| Metric Tons | | 40.486 | |
| Litres at 15°C | | 45000 | |
| Bunkering commenced | | 17.45 | |
| Bunkering completed | | 19.15 | |
| Barge | | 3044 | |

Quantity verified on water and found correct.
WILJO N.V. ANTWERP ?
Sampled GROSSEN and delivered in presence of master chief-engineer or other
ship's representative.
WILJO NV  representative              MASTER

                                      Chief-Engineer ...............

# Praxis

ENERGY AGENTS

## INVOICE

3 January, 2002

**M/V DINA**
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR MILLENIUM MARITIME SERVICES INC
645 FIFTH AVENUE, SUITE 705
NEW YORK, NY 10022
USA

### INVOICE DETAILS

| INVOICE No. | BUYER | M/V | PORT | DELIVERY DATE |
|---|---|---|---|---|
| 121118 | As Above | Dina | Antwerp | 22/12/2001 |

| GRADE | QUANTITY | UNIT | PRICE | AMOUNT |
|---|---|---|---|---|
| Fuel Oil | 380.017 | Metric Tonne | 127.00 USD | 48262.16 USD |
| Diesel Oil | 40.486 | Metric Tonne | 157.00 USD | 6356.30 USD |
| Transportation | 0.000 | Metric Tonne | 0.00 USD | 0.00 USD |
| | | | | |
| | | | | |
| | | | | |
| | | **TOTAL:** | | 54618.46 USD |

**Due Date:** 21/01/2002      (Credit Terms: 30 Days)

An interest charge of 2,00% pro rata per month will be levied for overdue payment.

Please remit by telegraphic transfer free of all bank charges to:

**BANK OF CYPRUS** (Swift Code: BCYPGRAA002)
357 Sygrou Avenue, 175 64 Paleon Faliro, Greece
In favour of: **PRAXIS ENERGY AGENTS**
account nbr: 105 2947
(Correspondent: Chase Manhattan Bank, New York)

PRAXIS ENERGY AGENTS S.A. - 43 DRAGATSANIOU STREET, 185 46 PIRAEUS, GREECE - VAT NO. 078117310
TELEPHONE: +(30 10) 40 800 40, FACSIMILE: +(30 10) 40 800 41. DUTY MOBILE: +(30 93) 25 35 077, E-MAIL: europe@praxisenergyagents.com



PLAINTIFF'S
EXHIBIT
7

# Praxis

ENERGY AGENTS

## DEBIT NOTE

### 15 February, 2002

M/V DINA
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR MILLENIUM MARITIME SERVICES INC
645 FIFTH AVENUE, SUITE 706
NEW YORK, NY 10022
USA

### DEBIT NOTE DETAILS

| DEBIT No. | BUYER | M/V | PORT | DELIVERY DATE |
|-----------|-------|-----|------|---------------|
| 121118 (D) | As Above | Dina | Antwerp | 22/12/2001 |

| INVOICE | CREDIT | DUE DATE | VALUE DATE | AMOUNT |
|---------|--------|----------|------------|--------|
| 54618.46 USD | 30 Days | 21/01/2002 | 15/02/2002 | 910.31 USD |
| | | | | |
| | | | | |

**TOTAL:** 910.31 USD

**Due Date: 15/02/2002**  (Late Payment of 25 Days)

Late payment interest charge is levied at 2.00% pro rata per month.

Please remit by telegraphic transfer free of all bank charges to:

BANK OF CYPRUS (SWIFT CODE: BCYPGRAA002)
367 SYGROU AVENUE, 175 64 PALEON FALIRO, GREECE
IN FAVOUR OF: PRAXIS ENERGY AGENTS
ACCOUNT NBR: 105 2947
(CORRESPONDENT BANK: CHASE MANHATTAN, NEW YORK)

PRAXIS ENERGY AGENTS S.A. - 43 DRAGATSANIOU STREET, 185 45 PIRAEUS, GREECE - VAT NO. 098117310
TELEPHONE: +(30 (0) 40 800 40, FACSIMILE: +(30 10) 40 800 41, DUTY MOBILE: +(30 93) 25 39 077, E-MAIL: europe@praxisenergyagents.com



PLAINTIFF'S EXHIBIT



# Praxis
ENERGY AGENTS

## BUNKER NOMINATION   _dc_

### 10 January, 2002

**TO: MILLENIUM MARITIME SERVICES INC.**
**ATTENTION: CAPT. ANDREAS ANDROULIDAKIS**

### CONTRACT NUMBER: 010033-USA-dk

ACTING AS CONTRACTUAL SELLERS AND IN ACCORDANCE WITH INSTRUCTIONS RECEIVED BY PURCHASER M/V "DINA" AND OWNERS WE HAVE NOMINATED THE FOLLOWING BUNKER STEM IN ACCORDANCE WITH OUR GENERAL TERMS AND CONDITIONS:

|  |  |
|---|---|
| BUYER: | MILLENIUM MARITIME SERVICES INC. |
|  | AND/OR M/V DINA |
|  | AND/OR MASTER/OWNERS/MANAGERS/OPERATORS |
| SELLER: | PRAXIS ENERGY AGENTS L.L.C. |
| PHYSICAL SUPPLIER: | AGIP PETROLI SPA |
| MOTOR VESSEL: | DINA |
| PORT OF SUPPLY: | BARI |
| DATE OF DELIVERY: | PROMPT – ETS 12TH OF JANUARY 2002 |
| GRADE/QUALITY: | GASOIL (DMA) |
| QUANTITY: | 40 MTS |
| PRICE (S): | USD 260.00 /MT |
| TRANSPORTATION: | USD 950.00 LUMP SUM TRUCKING FOR MAX. 50 MTS |
| CALLING COSTS: | --- |
| AGENTS: | AGENCIA MARITIMA D' LORUSSO (TEL: +39 80 5217 6431) |
| TERMS OF PAYMENT: | WITHIN THIRTY (30) DAYS FROM DATE OF DELIVERY VIA WIRE TRANSFER AGAINST ORIGINAL INVOICE AND DELIVERY RECEIPT (S). |

### SPECIAL TERMS

1. ALL TRUCK DELIVERIES ARE PLACED SUBJECT TO TRUCK ACCESSIBILITY;
2. SPECIFICATIONS TO BE IN ACCORDANCE WITH THE INTERNATIONAL STANDARDS AS THOSE SET BY THE INTERNATIONAL STANDARDIZATION ORGANIZATION *ISO 8217/1996 (E)*;
3. BUYERS AND/OR END USERS HAVE THE OPTION TO APPOINT ANY BUNKER SURVEYOR IN ORDER TO VERIFY THE DELIVERED QUANTITY AND THE QUALITY STANDARDS. SEALED REPRESANTITIVE SAMPLES TO BE TAKEN DURING THE BUNKERING OPERATION FROM BARGE'S MANIFOLD ONLY AND BE GIVEN TO THE MASTER OF THE SPECIFIC VESSEL;
4. ANY EXTRA CHARGES INCLUDING OVERTIME, TAXES ETC., IF INCURRED, TO BE AT COST AND FOR BUYERS ACCOUNT UNLESS OTHERWISE STATED.

THE DETAILS OF THIS NOMINATION ARE BEING SENT TO BOTH END USER AND SUPPLIER. ANY ERRORS OR OMMISSIONS SHOULD BE REPORTED BY EITHER PARTY IMMEDIATELY.

---

FOR ALL YOUR W O R L D W I D E BUNKER ENQUIRIES PLEASE CONTACT OUR OFFICES AT:
EUROPE– PHONE: +(30 10) 40 800 40, FAX: +(30 10) 40 800 41, DUTY MOBILE: +(30 93) 25 35 077, E-MAIL: europe@praxisenergyagents.com
AMERICA– PHONE: +(1 201) 818 1110, FAX: +(1 201) 818 1130, DUTY MOBILE: +(1 201) 647 0088, E-MAIL: america@praxisenergyagents.com


PLAINTIFF'S EXHIBIT

PLAINTIFF'S EXHIBIT

# Praxis

ENERGY AGENTS

## INVOICE

21 January, 2002

M/V DINA
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR MILLENIUM MARITIME SERVICES INC
645 FIFTH AVENUE, SUITE 705
NEW YORK, NY 10022
USA

### INVOICE DETAILS

| INVOICE No. | BUYER | M/V | PORT | DELIVERY DATE |
|---|---|---|---|---|
| 010033 | As Above | Dina | Bari | 11/01/2002 |

| GRADE | QUANTITY | UNIT | PRICE | AMOUNT |
|---|---|---|---|---|
| Fuel Oil | 0.000 | Metric Tonne | 0.00 USD | 0.00 USD |
| Diesel Oil | 39.700 | Metric Tonne | 260.00 USD | 10322.00 USD |
| Transportation | 1.000 | Lumpsum | 950.00 USD | 950.00 USD |
| | | | | |
| | | | | |
| | | | | |

| | TOTAL: | 11272.00 USD |
|---|---|---|

**Due Date: 10/02/2002**    (Credit Terms: 30 Days)

An interest charge of 2,00% pro rata per month will be levied for overdue payment.

Please remit by telegraphic transfer free of all bank charges to:

**BANK OF CYPRUS** (Swift Code: BCYPGRAA002)
367 Sygrou Avenue, 175 64 Paleon Faliro, Greece
In favour of: **PRAXIS ENERGY AGENTS**
account nbr: 185 2947
(Correspondent: Chase Manhattan Bank, New York)


PLAINTIFF'S EXHIBIT

# Praxis

ENERGY AGENTS

## DEBIT NOTE

### 15 February, 2002

M/V DINA
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR MILLENIUM MARITIME SERVICES INC
645 FIFTH AVENUE, SUITE 708
NEW YORK, NY 10022
USA

### DEBIT NOTE DETAILS

| DEBIT No. | BUYER | M/V | PORT | DELIVERY DATE |
|-----------|-------|-----|------|---------------|
| 010033(b) | As Above | Dina | Bari | 11/01/2002 |

| INVOICE | CREDIT | DUE DATE | VALUE DATE | AMOUNT |
|---------|--------|----------|------------|--------|
| 11272.00 USD | 30 Days | 10/02/2002 | 15/02/2002 | 37.57 USD |
| | | | | |
| | | | **TOTAL:** | 37.57 USD |

**Due Date:** 15/02/2002    (Late Payment of 5 Days)

Late payment interest charge is levied at 2,00% pro rata per month.

Please remit by telegraphic transfer free of all bank charges to:

**BANK OF CYPRUS** (SWIFT CODE: BCYPGRAA002)
367 SYGROU AVENUE, 175 64 PALEON FALIRO, GREECE
IN FAVOUR OF: **PRAXIS ENERGY AGENTS**
ACCOUNT NBR: 105 2947
(CORRESPONDENT BANK: CHASE MANHATTAN, NEW YORK)


PLAINTIFF'S
EXHIBIT

# THE REPUBLIC OF LIBERIA

## BUREAU OF MARITIME AFFAIRS

# THE LIBERIAN MARITIME LAW



# TITLE 22 OF THE LIBERIAN CODE OF LAWS OF 1956

OFFICE OF THE DEPUTY COMMISSIONER
8619 Westwood Center Drive, Suite 300
Vienna, Virginia 22182, USA

TELEPHONE: (703) 790-3434
TELEFAX: (703) 790-5655
TELEX:   UK 94049835

RLM-107

1/00


PLAINTIFF'S
EXHIBIT
13

## CHAPTER 3.  PREFERRED SHIP MORTGAGES AND MARITIME LIENS ON LIBERIAN VESSELS

§ 100.  Recording and Contents. - (1) A sale, conveyance, hypothecation, mortgage or assignment of mortgage of any vessel shall not be valid in respect of such vessel, against any person other than the grantor or mortgagor, his heirs or devisees and persons having actual notice thereof until the instrument evidencing such transaction is recorded in the Office of the Commissioner or in the office of his duly authorized agent specifically appointed to record such documents.

(2) The Commissioner or such duly authorized agent shall record such instruments in the order of their reception in books to be kept for that purpose and indexed to show:

    (a) The name of the vessel;

    (b) The names of the parties;

    (c) The time and date of reception of the instrument;

    (d) The interest in the vessel transferred or affected; and

    (e) The amount and date of maturity of any mortgage.

Prior legislation: Lib. Mar. Code, t. III, sec. 1; amended Dec. 22, 1949.

§ 101.  Preferred Mortgage. - A valid mortgage, which at the time it is made includes the whole of any vessel, shall have a preferred status in respect of such vessel as of the date of its recordation if:

(1) The mortgage is recorded as provided herein;

(2) An affidavit is filed with the record of such mortgage to the effect that the mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the mortgagor or any lien or of the mortgaged vessel; and

(3) The mortgage does not stipulate that the mortgagee waives the preferred status thereof.

(4) After December 31, 1986 the affidavit of good faith referred to in paragraph (2) of this Section shall no longer be required.

Prior legislation: Lib. Mar. Code, t. III, sec. 2; amended Dec. 22, 1949; amended eff. Mar. 1, 1958; amended eff. Dec. 24, 1984; amended eff. Aug. 28, 1986.

§ 102. Termination of Mortgagee's Interest. - (1)  The interest of a mortgagee in a vessel registered under this Title shall not be terminated by a forfeiture of the vessel for a violation of any law of the Republic of Liberia, unless the mortgagee authorized, consented, or conspired to effect the illegal act, failure, or omission which constituted such violation.

(2) A vessel which is the subject of a Preferred Mortgage may not be canceled from the Register for so long as the indebtedness secured by the Preferred Mortgage remains unsatisfied or the Mortgage is not otherwise discharged.

Prior legislation: Lib. Mar. Code, t. III, sec. 3; amended eff. Mar. 1, 1958; amended eff. Dec. 24, 1984.

§ 103.  Ship Mortgage: Conditions Precedent. - A mortgage shall not be recordable unless it states the interest of the mortgagor in the vessel, and the interest so mortgaged.  A mortgage or certificate of discharge thereof shall not be recorded unless it bears an apostille issued by a competent authority of a State Party to the Hague Convention of 5 October 1961, as amended, or has been acknowledged or is submitted with such other proof of due execution as may be required by Regulation.

Prior legislation: Lib. Mar. Code, t. III, sec. 4; amended Dec. 22, 1949; amended eff. Aug. 28, 1986.

§ 104.  Bills of Sale:  Recording. - The Commissioner or any Deputy Commissioner may accept for recording in his Office any bill of sale or other conveyance of a vessel which recites the interest of the seller in the vessel and the interests sold or conveyed, provided it has previously been acknowledged or is submitted with such other proof of due execution as may be required by Regulation, and provided further that any bill of sale of a vessel already documented under the laws of Liberia must have attached there a true copy of its latest Certificate of Registry.

Prior legislation:  Mar. Reg. 3.2, eff. Feb. 28, 1949;  amended June 29, 1949;  amended eff. Mar. 1, 1958;  amended eff. Dec. 24, 1984;  amended eff. Aug. 28, 1986.

§ 105.  Mortgages:  Recording. - The Commissioner or any Deputy Commissioner may accept for recording in his Office any mortgage on a vessel which recites the interest of the mortgagor in the vessel and the interest so mortgaged, provided it bears the Hague Convention apostille or has been acknowledged or is submitted with such other proof of due execution as may be required by Regulation, and provided further that written proof is furnished to him of the amounts and dates of any documents or evidence of debts in support thereof.

Prior legislation:  Mar. Reg. 3.2, eff. Feb. 28, 1949;  amended June 29, 1949;  amended eff. Mar. 1, 1958;  amended eff. Dec. 24, 1984;  amended eff. Aug. 28, 1986.

§ 106.  Preferred Mortgage. - (1) A mortgage which complies with the conditions enumerated in this Chapter is designated as a Preferred Mortgage.

(2) A mortgage which includes property other than a vessel shall not be held a Preferred Mortgage unless the mortgage provides for the separate discharge of such property by the payment of a specified portion of the mortgage indebtedness.

Prior legislation: Lib. Mar. Code, t. III, sec. 5(c);  amended Dec. 22, 1949 and Mar. Reg. 3.3, eff. Feb. 28, 1949;  amended eff. Mar. 1, 1958;  amended eff. Dec. 24, 1984;  amended eff. Aug. 28, 1986.

§ 106A.   Advances and Repayments. - (1)  A Preferred Mortgage shall not be extinguished or lose its priority because all previously outstanding obligations secured thereby have been fully repaid or otherwise performed, provided that an advance or other value is to be given at a later time pursuant to commitment existing at the time the Mortgage is recorded. For the purpose of this paragraph an advance or other value is given "pursuant to commitment" if the mortgagee or other person entitled to the benefit of the security of the mortgage has bound himself to give it, whether or not a subsequent event of default or other event not within his control has relieved or may relieve him from his obligation.

(2) When a Preferred Mortgage secures an obligation in respect of which one or more advances or repayments may be made from time to time in the future and the maximum amount outstanding under the obligation at any one time is limited to a certain amount, the amount to be recorded with respect to such obligation may be either:

    (a) such maximum amount that may be outstanding at any one time, or

    (b) the aggregate of all possible advances that may be made.

The recording shall clearly indicate whether the amount is the maximum amount that may be outstanding at any one time or is the aggregate of all possible advances.

Eff. Dec. 24, 1984;  amended eff. Aug. 28, 1986.

§ 106B.   Units of Account. - (1)  The obligations secured by a Preferred Mortgage may be expressed in any unit or units of account to which the parties may agree, including but not limited to currency of the Republic of Liberia, currency or currencies of any foreign state or states, or in equivalents of any other unit or units of account established by intergovernmental organizations.

(2) If a Preferred Mortgage secures an obligation in one or more specified units of account and there is an option to have a unit of account altered from time to time, the principal amount of the mortgage to be recorded shall be denominated in one or more of the said specified units of account.  The recordation may include as additional words "or an equivalent amount in any alternate unit of account," or similar language, and if such additional words are recorded, no change in the recorded amount shall be required to reflect the fact that the obligation or any portion thereof is subsequently denominated in a different unit or units of account, unless the parties otherwise agree.

(3) When a Preferred Mortgage secures an obligation in respect of which there is an option to have the obligation amount denominated from time to time in alternate units of account but which continues to be payable in, or by reference to, a specified unit of account:

    (a) the amount of the obligation to be recorded shall be expressed in the specified unit of account; and

    (b) notwithstanding any exercise of the option, no change in the recorded amount shall be required.

(4) A Preferred Mortgage as described in paragraphs (2) or (3) of this Section 106B may additionally secure any loss up to a specified amount arising out of fluctuations between a specified unit of account and any alternate unit of account in which the obligation amount may be denominated from time to time, and such specified amount shall also be recorded.

Eff. Dec. 24, 1984; amended eff. Aug. 28, 1986.

§ 107. Lien of Preferred Mortgage. - A Preferred Mortgage shall constitute a maritime lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. The lien of a Preferred Mortgage shall not be in any way impaired or affected because the vessel's document following recording of the mortgage has expired, or has been restrictively endorsed, suspended, revoked or canceled.

Prior legislation: Lib. Mar. Code, t. III, sec. 6; amended Dec. 22, 1949; amended eff. Dec. 24, 1984; amended eff. Aug. 28, 1986.

§ 108. Interest on Preferred Mortgage. - Any other provision of law or regulation to the contrary notwithstanding, a Preferred Mortgage may secure such interest on an obligation secured by the mortgage as the parties may agree, which interest may bear fixed rates, variable rates, rates based upon formulas, or by adding margins to the mortgagee's cost from time to time of funding an obligation secured by the mortgage, or by any other method to which the parties may agree.

Prior legislation: Lib. Mar. Code, t. III, sec. 7; repealed and substituted eff. Dec. 24, 1984.

§ 109. Priority; Disclosure of Liens; Penalty. - The mortgagor, before executing a Preferred Mortgage, shall disclose to the mortgagee in writing the existence of any maritime lien, prior mortgage, or other obligation or liability upon the vessel to be mortgaged which is known to the mortgagor.

After the execution of such Mortgage and before the mortgagee has had a reasonable time in which to record it, the mortgagor, without the consent of the mortgagee, shall not incur any contractual obligation creating a lien upon the vessel, other than liens for wages of stevedores when employed directly by the owner, operator, Master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average or for salvage, including contract salvage, tonnage taxes and other charges of the Commissioner and Deputy Commissioner of Maritime Affairs in respect of the vessel.

Whoever, being a mortgagor or the president or principal officer of a corporate mortgagor, violates this Section with intent to hinder, delay or defraud any existing or future creditor of the mortgagor or any lienor of the mortgaged vessel, shall be fined not more than two thousand dollars or

imprisoned for a period of not more than two years or both. The mortgage indebtedness shall thereupon become immediately due and payable at the election of the mortgagee.

Prior legislation: Lib. Mar. Code, t. III, sec. 8; amended eff. Aug. 18, 1964; amended eff. Aug. 28, 1986.

§ 110. Certified Copies: Exhibition. - Upon recording a Preferred Mortgage, two certified copies thereof shall be delivered to the mortgagor who shall place and use due diligence to retain one copy on board the mortgaged vessel, and cause such copy and the document of the vessel to be exhibited by the Master to any person having business which may give rise to a maritime lien or to the sale, conveyance, or mortgage of the vessel.

The license of a Master who wilfully fails to exhibit such documents and copy of mortgage may be suspended or revoked.

Prior legislation: Lib. Mar. Code, t. III, sec. 9; amended Dec. 22, 1949.

§ 111. Discharge of Mortgage. - The mortgagor upon a complete discharge of the mortgage indebtedness shall forthwith file a certificate of such discharge duly executed by the mortgagee, his successors or assigns, with the Commissioner or his duly authorized agent who shall thereupon record the certificate; and the mortgagor may similarly file a certificate of partial discharge, which shall be similarly recorded.

Prior legislation: Lib. Mar. Code, t. III, sec. 10; amended Dec. 22, 1949; amended eff. Mar. 1, 1958; amended eff. Aug. 28, 1986.

§ 112. Foreclosure and Default: Jurisdiction and Procedure. - (1) The lien of a Preferred Mortgage may be enforced in Liberia by a suit in rem in Admiralty upon default of any term or condition. In addition to any notice by publication, actual notice of the commencement of suit shall be given by the libellant, in such manner as the Court directs, to the Master, other ranking officer, or caretaker of the vessel, and to any person who has recorded a notice of claim of an undischarged lien upon the vessel, unless after search by the libellant satisfactory to the Court such person is not found within Liberia. Failure to give such notice shall not constitute a jurisdictional defect, but the libellant shall be liable to such person for damages in the amount of his interest in the vessel terminated by the suit.

(2) The lien of a Preferred Mortgage may also be enforced by a suit in rem in Admiralty or otherwise in any foreign country in which the vessel shall be found, pursuant to the procedure of said country for the enforcement of ship mortgages constituting maritime liens on vessels documented under the laws of said country.

(3) Notwithstanding anything in this Title, the mortgagee may, in addition to all other remedies granted by this Chapter, bring suit in personam against the mortgagor in any court of competent jurisdiction for the amount of the outstanding mortgage indebtedness or for any deficiency in the full payment thereof.

(4) This Title does not authorize the enforcement by suit _in rem_ in Admiralty of the rights of the mortgagee in respect to realty or personalty other than vessels covered by a mortgage.

_Prior legislation:_  Lib. Mar. Code, t. III, sec. 11; amended Dec. 22, 1949.

§ 112A.   **Preferred Status.** - As used in Sections 107, 112, 113 and 115 of this Title, the term "Preferred Mortgage" shall include, in addition to a Preferred Mortgage made pursuant to the provisions of this Chapter, any mortgage, hypothecation or similar charge created as security upon any documented foreign vessel if such mortgage, hypothecation or similar charge has been duly and validly executed and registered in accordance with the laws of the nation where the vessel is documented; and the term "Preferred Mortgage lien" shall also include the lien of such mortgage, hypothecation or similar charge.

Eff. July 11, 1969.

§ 113.  **Foreclosure; Priority of Preferred Mortgage Lien; Exception.** - Upon the sale of any vessel in a suit _in rem_ in Admiralty for the enforcement of a Preferred Mortgage lien, all preexisting claims in the vessel, including any possessory common law lien, shall terminate and shall thereafter attach in like amount and in accordance with their respective priorities to the proceeds of sale; except that the Preferred Mortgage lien shall have priority over all claims against the vessel, except liens arising prior in time to the recording of the Preferred Mortgage as provided in this Chapter, liens for damages arising out of tort, liens arising under Section 83 of Chapter 2, liens for crew's wages, for general average, and for salvage (including contract salvage) and expenses and fees allowed and costs taxed by the Court.

_Prior legislation:_  Lib. Mar. Code, t. III, sec. 12; amended Dec. 22, 1949; amended eff. Aug. 28, 1986.

§ 114.  **Necessaries: Lien; Enforcement.** - (1) Whoever furnishes repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any foreign or domestic vessel upon the order of the owner or person authorized by the owner, shall have a maritime lien on the vessel.

(2) The managing owner, ship's husband, Master, or any person to whom the management of the vessel at the port of supply is entrusted, including any such appointed by a charterer, owner _pro hac vice_ or agreed purchaser in possession, shall be presumed to have authority from the owner to procure such necessaries; but a person tortiously or unlawfully in possession or charge of the vessel shall not have authority to bind it.

(3) This Section shall not confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering necessaries was without authority to bind the vessel therefor.

_Prior legislation:_  Lib. Mar. Code, t. III, sec. 13.

**§ 115. Necessaries: Waiver of Lien.** - This Chapter shall not prevent the furnisher of repairs, supplies, towage, use of dry dock or marine railway or other necessaries, or the mortgagee, from waiving his right to a lien or in the case of a Preferred Mortgage lien to the preferred status of such lien, at any time by agreement or otherwise.

Prior legislation: Lib. Mar. Code, t. III, sec. 14.

**§ 116. Abolition of Mortgage Endorsement.** - (1) Except as provided in paragraph (2) of this Section, nothing previously contained in Sections 63 or 72 of Chapter 2 or Sections 101, 106, 106A, 106B, 107, 109, 110, 111 and 113 of Chapter 3 of this Title, or in any other provision of law, shall require, permit or be construed as requiring or permitting, endorsements upon any vessel's document in connection with the validity, recording, designation as a Preferred Mortgage, or preferred status of any mortgage in respect of any such vessel, or the clearance to be given to such vessel following the recording of any such mortgage.

(2) Notwithstanding the provisions of paragraph (1) of this Section any vessel's document issued or reissued prior to January 1, 1985 and any instrument made, recorded and endorsed prior to January 1, 1985 shall remain subject to the endorsement requirements previously contained in Sections 63 and 72 of Chapter 2 and Sections 101, 106, 106A, 106B, 109, 111 and 113 of Chapter 3 of this Title until such time as the vessel's document is surrendered or reissued or a new document is issued, as the case may be.

Eff. Dec. 24, 1984; amended eff. Aug. 28, 1986.

**§ 117. Effect of Amendment of Chapter.** - No amendment of this Chapter shall be so construed as to impair or in any respect invalidate any instrument or other document recorded or any act performed pursuant to this Chapter by the Commissioner or a Deputy Commissioner or his authorized agent prior to the effective date of such amendment.

Eff. Dec. 24, 1984.

AO 440 (Rev 10 93) Summons in a Civil Action

# United States District Court

SOUTHERN _____ DISTRICT OF _____ TEXAS

PRAXIS ENERGY AGENTS S.A.

## SUMMONS IN A CIVIL CASE

V.

M/V DINA, her engines, tackle,
appurtenances, etc., in rem

CASE NUMBER:   B-02- 028

TO: (Name and address of defendant)

M/V DINA
c/o the Master
currently berthed at
the Port of Brownsville

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Dimitri P. Georgantas
Georgantas & Walters L.L.P.
815 Walker Street, Suite 953
Houston, Texas 77002

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of
time after service.

**Michael N. Milby, Clerk**

CLERK

February 15, 2002

DATE

(BY) DEPUTY CLERK